*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. A. FECTEAU, Minor.

UNPUBLISHED
May 11, 2023

No. 363367
Wayne Circuit Court
Family Division
LC No. 2018-001372-NA

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

The circuit court terminated respondent-father's parental rights to his young daughter, HF, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (g) (failure to provide custody and care despite financial means to do so). Respondent evaded establishing paternity for 21 months and then failed to consistently participate in services. As a result, respondent failed to remedy the conditions that led to jurisdiction and lacked a true bond with his daughter. We affirm.

## I. BACKGROUND

HF was born on March 7, 2019. Respondent was present at the hospital but left before he could establish paternity. The Department of Health and Human Services (DHHS) took HF into care upon her hospital release as both mother and baby tested positive for substances and there was an open child protective proceeding relating to mother's older children. Mother provided respondent's first name and phone number. However, respondent had been incarcerated by that time to serve a four-month sentence for home invasion. He was released in July 2019.

Respondent was aware of these child protective proceedings by July 2019, when his mother contacted the caseworker. Respondent even appeared at the court building for an October 2019 hearing, but declined to go into the courtroom. At a January 2020 hearing, a caseworker testified that he had contacted respondent to arrange DNA testing, but respondent waited two months to return his call. Respondent indicated his desire for a DNA test but then did not follow through before the court's next hearing in May 2020. In the meantime, three moths elapsed before respondent contacted the worker. At one point, respondent indicated that he would sign an affidavit of parentage, but again did not follow through. Despite several attempts by the

-1-

caseworker, paternity was not established until November 2020, and respondent was finally named as HF's legal father on December 1. The child was then almost 21 months old.

The DHHS filed a supplemental petition to take jurisdiction over HF in relation to respondent. At that time, respondent was living in a two-bedroom home with his parents. Space was not the only roadblock to placing HF in respondent's care. Respondent's mother was on the Central Registry. However, the court had granted respondent supervised parenting time and those visits were going well.

In March 2021, respondent made several admissions permitting the DHHS to take jurisdiction. The court ordered respondent to comply with a service plan, which included parenting classes, a substance abuse assessment and follow-up treatment, regular visitation with the child, finding suitable housing, and maintaining a legal income. Respondent's participation was spotty at best. The caseworker had to refer respondent four times for parenting classes and seven times for a substance abuse assessment. After the assessment, respondent repeatedly missed substance abuse screens. He failed to consistently participate in counseling services ordered after his substance abuse assessment and had to be rereferred. Respondent did complete parenting classes by February 2022. He continued to live with his mother and claimed to have a job in a restaurant, but never provided proof of employment. Respondent often missed parenting time or arrived 15 to 30 minutes late. Despite being told that only he was permitted to attend, respondent repeatedly brought his sister or nieces and nephews along on his visits. Respondent also failed to appear at a series of dispositional review hearings.

The DHHS filed a supplemental petition to terminate respondent's parental rights in April 2022, and a termination hearing began on June 21. The caseworker testified that respondent only started attending visits consistently and on time a few weeks before the hearing.

The caseworker testified that respondent suddenly presented proof of employment on June 1, 2022. Despite that respondent had asserted that he worked in a restaurant, he then told the caseworker that he had done remodeling work for year at Paramount Realty. Paramount Realty is owned by Jennifer Smitherman, who was in a romantic relationship with respondent's brother. The 1099 presented by respondent was filled out incorrectly, further supporting that the employment arrangement was created in a rush. Respondent also claimed that lived in Smitherman's home. He emailed the caseworker an informal lease agreement at midnight, just before the termination hearing. The lease represented that respondent paid $200 in monthly rent, but respondent and Smitherman agreed that respondent had not actually paid any rent. Although the home had five bedrooms, respondent indicated that he was only home to sleep and therefore just used a couch. However, he had prepared a bedroom in the home for HF. He and Smitherman indicated that the only other residents in the home were Smitherman and her two children. This was inconsistent with respondent's earlier representations to the caseworker that his brother also lived in the home. Given the late notice of this arrangement, the caseworker was unable to conduct a home study before the termination hearing. The caseworker found respondent's housing and employment situation problematic as it could only last as long as Smitherman and respondent's brother remained on good terms. And respondent and his brother were codefendants in a retail fraud or larceny case stemming from events in 2021.

The DHHS also presented evidence that respondent's criminal behavior continued throughout these proceedings. As noted, respondent was charged with either retail fraud or larceny in 2021. At the September 14, 2022 continued termination hearing, respondent admitted that this matter had yet to be resolved. He also had recently spent three weeks in jail to resolve two outstanding warrants for a separate retail fraud issue and a trespassing case.

The circuit court ultimately terminated respondent's rights under MCL 712A.19b(3)(c)(*i*) and (g). The court acknowledged "some efforts" by respondent to comply with his parenting plan, including his completion of parenting classes, but nevertheless found the evidence sufficient to satisfy factor (c)(*i*). Regarding factor (g), the court reasoned, "[Respondent] has testified himself regarding his financial condition. He has been given . . . approximately 18 months for [his] parent agency treatment plan, and there continues to be issues and barriers to him providing proper custody and care." The court found termination to be in HF's best interests as respondent had only begun making progress in services recently and the stability of his housing and income remained highly uncertain. The court described respondent's bond with HF as "questionable at best," and noted that HF had stability in her current foster home, that there were no issues with this placement, and that HF was bonded to the foster parent, who was willing to adopt.

Respondent now appeals.

## II. STATUTORY GROUNDS

Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court's termination decision followed the filing of a supplemental petition. When termination is sought in a supplemental petition based on new grounds, the DHHS must present legally admissible evidence in support. *In re DMK*, 289 Mich App 246, 258; 796 NW2d 129 (2010). We review for clear error a circuit court's factual finding that a statutory termination ground has been established. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009).

The court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g), which provide:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

Respondent asserts that he remained substance free throughout the proceedings. Even assuming that this is true, sobriety was only one factor to be considered. Termination was supported under factor (c)(*i*) as other conditions that led to adjudication—the lack of a stable home and income—continued to persist at the time of the termination hearing.

When the court took jurisdiction, respondent claimed to be employed at a restaurant, but never provided proof of that employment. He was living in a small home with his parents without room for HF. Moreover, his mother was on the Central Registry. On June 1, 2022, respondent suddenly presented a 1099 from Paramount Realty and claimed he had been working there for a year. At midnight on June 21, respondent submitted evidence for the first time that he was renting space in Smitherman's home. Respondent testified that he slept on a couch despite that the house has five bedrooms, and asserted that he was only in the home to sleep. The court found both of these claims suspect and lacking in permanency. An inference could be made under the circumstances that respondent was not truthful about his employment or his residence. We must give special deference to the lower court's ability to assess the credibility of the witnesses before it in this regard. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1988).

Even if respondent was employed at Paramount Realty and lived in Smitherman's home, the court did not err in finding that this was not a stable, permanent condition. Respondent's employment and residency were contingent on his brother's amicable relationship with Smitherman. Given that respondent and his brother had been charged together in criminal matters during these child protective proceedings, it was questionable that respondent's brother could be counted upon to provide the necessary security.

Respondent's criminality also was an ongoing problem. Respondent spent the first four months of HF's life in jail. He spent three weeks in jail further into the proceedings to clear up two outstanding bench warrants. Respondent and his brother allegedly committed a separate act of retail fraud or larceny in 2021. That criminal matter was still pending at the termination hearing.

Evidence also supported that respondent had not sufficiently benefited from parenting classes. Respondent did not meet his daughter until she was 21 months old. The court ordered supervised parenting time and ordered respondent to participate in parenting classes. The caseworker had to refer respondent for parenting classes four times and he did not complete them until February 2022. The caseworker opined that respondent had not adequately benefitted from those classes given his continued difficulties during visits. For most of the proceedings, respondent was absent or inconsistent in visiting his child. When respondent did visit HF, he repeatedly brought other family members along, even after the caseworker told him this was not permitted. The caseworker conceded that respondent was very patient with HF and helped her transition during visits. However, HF never gained any level of comfort with her father. A parent cannot just participate in services; he or she must demonstrate benefit. *Trejo*, 462 Mich at 346 n 3; *In re BZ*, 264 Mich App 286, 300; 690 NW2d 505 (2004). Respondent's belated participation resulted in an inability to demonstrate the necessary benefit.

Respondent contends for the first time on appeal that the DHHS should have provided supportive visitation to aid his development of a bond with HF. The failure to provide services is relevant to a claim that the DHHS did not provide adequate reunification services. Respondent did not raise such a challenge, however, in his statement of questions presented. This issue was not properly presented and we will not consider it. See *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011) ("[W]e generally do not consider any issues not set forth in the statement of questions presented.").

Termination was also supported under factor (g). "[A] parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). As already noted, although respondent improved his efforts on the eve of the termination hearing, he made little to no effort for most of the proceedings. He missed several dispositional review hearings, went weeks and months without contacting the caseworker, had to be rereferred for services several times, and missed many parenting-time sessions. The less-than-credible evidence of employment and housing presented on the eve of the hearing was insufficient to support that respondent could provide proper care and custody for HF.

### III. BEST INTERESTS

Respondent also challenges the circuit court's determination that termination of his parental rights was in HF's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the court's factual findings in this regard for clear error. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003).

When determining whether termination is in the best interests of a child, the focus is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors relevant to the best-interest determination include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "[T]he likelihood that the child could be returned to her parents' home within the foreseeable future, if at all," is also relevant. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015) (quotation marks and citation omitted).

While respondent loves HF, he does not share a parent-child bond with her. Respondent did not meet HF until she was 21 months old because he delayed in cooperating to establish paternity. For more than a year thereafter, respondent missed nearly half of his parenting-time sessions and arrived late to others. Respondent repeatedly brought other family members to the visits despite being instructed not to. Although the caseworker admitted that respondent was very patient with HF, HF never acclimated to the visits and did not develop a bond with her father.

Respondent's slow start in his case service plan also weighed in favor or termination. Respondent never completed individual counseling as recommended following the substance abuse assessment. While he finally completed parenting classes in February 2022, he demonstrated no benefit during visits. And respondent's 11th hour evidence that he had secured employment and housing was less than credible and presented too late to evaluate the home's suitability or the sustainability of the arrangement.

HF had been in the same foster care placement since she was only a few months old. She was well adjusted and well cared for. Her foster placement wished to adopt. In contrast, respondent could offer no permanence, stability, or security. We discern no error in the court's conclusion that termination of respondent's parental rights was in HF's best interests.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado